MIN: ██████████████

EXHIBIT 2

# NEW YORK BALLOON NOTE
(Fixed Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

January 9, 2007                    CENTEREACH                    New York
[Date]                               [City]                        [State]
                    47 OAK STREET, CENTEREACH, NY  11720

[Property Address]

1.    BORROWER'S PROMISE TO PAY
    In return for a loan that I have received, I promise to pay U.S. $535,500.00            (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."
2.    INTEREST
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          9.825 %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.
3.    PAYMENTS
    (A) Time and Place of Payments
    I will pay principal and interest by making a payment every month.
    I will make my monthly payments on the 1st         day of each month beginning on March 1, 2007              .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 02/01/2037             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by the Note Holder
    (B) Amount of Monthly Payments
    My monthly payment will be in the amount of U.S. $4,473.71

NEW YORK BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT          Form 3260.33 1/01 (rev. 5/02)

Page 1 of 3

870N(NY) (0203)          VMP MORTGAGE FORMS - (800)521-7291          Initials KmV

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of f i f t e e n    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2 . 0 0 0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Form 3260.33

870NINY)

### AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
KRISTINE M VADJINIA            -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                               -Borrower                                      -Borrower

*[Sign Original Only]*



Pay to the order of, without recourse
New Century Mortgage Corporation
By:
Steve Nagy
V.P. Records Management

**\*** **\*** **\***
Wells Fargo Bank, N.A.,
as Trustee, on Behalf of
the Certificateholders, MASTR
Asset Backed Securities
Trust 2007-ncw mortgage
Pass Through Certificates
Series 2007-ncw.



### SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: MECA (EXT/CON/MOD)          Recorded:     12/14/2018
Number of Pages: 11                             At:           03:56:48 PM
Receipt Number : 18-0234260
**MORTGAGE NUMBER: DJ032834**                   LIBER:        M00022989
                                                PAGE:         593

District:            Section:            Block:             Lot:
0200                 485.00              06.00              010.000
                 EXAMINED AND CHARGED AS FOLLOWS
Mortgage Amount:          $689,991.76

Received the Following Fees For Above Instrument

|              |           | Exempt |             |            | Exempt |
|--------------|-----------|--------|-------------|------------|--------|
| Page/Filing  | $55.00    | NO     | Handling    | $20.00     | NO     |
| COE          | $5.00     | NO     | NYS SRCHG   | $15.00     | NO     |
| Affidavit    | $5.00     | NO     | Notation    | $1.00      | NO     |
| Cert.Copies  | $0.00     | NO     | RPT         | $200.00    | NO     |
| RPT-MTG Fee  | $300.00   | NO     | Mort.Basic  | $3,450.00  | NO     |
| Mort.Addl    | $2,070.00 | NO     | Mort.SplAddl| $0.00      | NO     |
| Mort.SplAsst | $1,725.00 | NO     |             |            |        |
|              |           |        | Fees Paid   | $7,846.00  |        |

**MORTGAGE NUMBER: DJ032834**
              THIS PAGE IS A PART OF THE INSTRUMENT
                  THIS IS NOT A BILL

                    JUDITH A. PASCALE
                    County Clerk, Suffolk County

*NC*

**Number of pages** 11

RECORDED
2018 Dec 14 03:56:48 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L N00022989
P 593
DT032834

This document will be public record. Please remove all Social Security Numbers prior to recording.

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

3

FEES 1224,465.20    685,001.14

| | |
|---|---|
| Page / Filing Fee | _____ |
| Handling | 20. 00 |
| TP-584 | _____ |
| Notation | _____ |
| EA-52 17 (County) | _____ |
| EA-5217 (State) | _____ |
| R.P.T.S.A. | 200 |
| Comm. of Ed. | 5. 00 |
| Affidavit | 5 |
| Certified Copy | _____ |
| NYS Surcharge | 15. 00 |
| Other | 300 |

Sub Total _____

Sub Total _____

Sub Total _____

Grand Total 001

Mortgage Amt. _____
1. Basic Tax _____
2. Additional Tax _____
Sub Total _____
Spec./Asst.
  or
Spec. /Add.
TOT. MTG. TAX   7245
Dual Town _____ Dual County _____
Held for Appointment _____
Transfer Tax _____
Mansion Tax _____

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES ___✓___ or NO _____

If NO, see appropriate tax clause on page # _____ of this instrument.

4    D   3766420    0200 48500 0600 010000

Real Pr
Tax Ser
Agen
Verifica

P T S
R LPA A
27-NOV-18

5    Community Preservation Fund

Consideration Amount $ _____

CPF Tax Due        $ _____

Improved _____
Vacant Land _____
TD _____
TD _____
TD _____

6    Satisfactions/Discharges/Releases List Property Owners Mailing Address
RECORD & RETURN TO:
VISIONET SYSTMES, INC
183 INDUSTRY DRIVE
PITTSBURGH, PA 15275

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

7    Title Company Information
Co. Name SPECIALIZED LOAN SERVICING, LLC
Title #

8    **Suffolk County Recording & Endorsement Page**

This page forms part of the attached MODIFICATION AGREEMENT _____ made
by:                                                  (SPECIFY TYPE OF INSTRUMENT)

KRISTEN M. VADJINIA

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

SPECIALIZED LOAN SERVICING, LLC, AS

A-I-F FOR WELSS FARGO BANK, NA

In the TOWN of BROOKHAVEN

In the VILLAGE

or HAMLET of _____

BOXES **6** THRU **8** MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

**After Recording Please Mail To:**

VISIONET SYSTEMS INC
183 INDUSTRY DRIVE
PITTSBURGH PA 15275

| District/Section/Block/Lot | **"The Premises is or will be improved with** |
| 0200.48500.0600.010000 | **a one or two family house or dwelling"** |

——————————————— *[Space Above This Line For Recording Data]* ———————————————

**Original Principal Amount $535,500.00**
**Unpaid Principal Amount $534,476.46**       Loan No: 
**New Principal Amount $1,224,468.22**
**Total Cap Amount $689,991.76**

# MODIFICATION AGREEMENT

Executed on this day: **July 17, 2018**
Borrower ("I"): **KRISTINE M. VADJINIA** whose address is **47 OAK ST, CENTEREACH, NY 11720**
("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For
purposes of this document words signifying the singular (such as "I") shall include the plural (such as
"we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **SPECIALIZED LOAN SERVICING LLC, AS ATTORNEY-IN-FACT FOR
WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE MASTR ASSET BACKED SECURITIES TRUST
2007-NCW MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-NCW** whose principal place
of business and mailing address is **8742 LUCENT BLVD, SUITE 300, HIGHLANDS RANCH, CO  80129**
("Lender").
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **January 9,
2007**

Original security instrument in the amount of **$535,500.00** and recorded on **January 30, 2007** in Book,
Volume, or Liber No. **21466**, at Page **766** (or as Instrument No. **N/A**) , in the Office of the County Clerk or
Register of **SUFFOLK** County, State of **NEW YORK**.

Loan Number:

Property Address ("Property"): **47 OAK ST, CENTEREACH, NY 11720**

Legal Description: **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**CHAIN OF TITLE: SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF:**

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the

Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. Property Type: Single Family
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
   B. I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **July 1, 2018** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **August 1, 2018**.

   A. The new Maturity Date will be: **April 1, 2037**.
   B. The Total Principal Balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, if applicable and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid

Amounts", if applicable) less any amounts paid to Lender but not previously credited to my Loan, as set forth hereunder.

C. The Interest Bearing Principal balance of my Note will be **$857,127.75** (the 'Interest Bearing Principal Balance'). In addition to the Interest Bearing Principal balance of **$857,127.75**, any outstanding amounts inclusive of unpaid and deferred interest, fees, escrow advances and other costs as applicable shall be deferred. The total amount deferred through this agreement is **$367,340.47** and is known as (the 'Deferred Balance') and I will not pay interest or make monthly payments on this amount. The total amount payable under the note **$1,224,468.22** (the 'Total Principal Balance') is inclusive of the Interest bearing Principal Balance and the Deferred Balance. Interest at the rate of **4.500%** will begin to accrue on the Interest Bearing Principal Balance as of **July 1, 2018** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **August 1, 2018**. My payment schedule for the modified Loan is as follows:

Borrower promises to make monthly payments of principal and interest of U.S. **$3,853.33** beginning on **August 1, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. I will make these payments every month, in addition to 1 final balloon payment, consisting of deferred principal in the amount of **$367,340.47** and additional unpaid principal amount of **$631,925.81**. The Balloon payment amounts stated are if all monthly payments have been made as scheduled. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. Your initial monthly escrow payment will be **$1,086.27**. Your initial total monthly payment will be **$4,939.60**.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. If on **April 1, 2037**, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co- borrower is deceased; (ii) the borrower and co- borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to

make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in

accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive

such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated,inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

_____ (Seal)    Date: 7/19/2018

KRISTINE M. VADJINIA

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____ *Trustee of the*    _____ *Trust instrument dated*

_____ *For the benefit of*    _____ *(Borrower)*

### ACKNOWLEDGMENT

State of _New York_    §
                                   §
County of _Suffolk_    §

    On the _19_ day of _July_, in the year _2018_ before me, _Michelle Theresa Alliegro_, the undersigned, a Notary Public in and for said State, personally appeared **KRISTINE M. VADJINIA** personally known to me (or proved to me on the basis of satisfactory evidence) to be the individual(s) whose name is(are) subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies) and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature of Individual Taking Acknowledgment

_____
Printed Name    Michelle Theresa Alliegro

_____
Office of Individual Taking Acknowledgment    Bethpage Federal Credit Union

My Commission Expires: 12/16/21

MICHELLE THERESA ALLIEGRO
Notary Public – State of New York
NO. 01AL6294027
Qualified in Suffolk County
My Commission Expires Dec 16, 2021

(Seal)

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**SPECIALIZED LOAN SERVICING LLC, AS ATTORNEY-IN-FACT FOR WELLS FARGO BANK, N.A.
AS TRUSTEE FOR THE MASTR ASSET BACKED SECURITIES TRUST 2007-NCW MORTGAGE
PASS-THROUGH CERTIFICATES SERIES 2007-NCW**

By: _____          8-1-18 _____
    Dane Wallace                    -Lender    Date of Lender's Signature
    Second Assistant Vice President
    Customer Resolution Workout

## ACKNOWLEDGMENT

State of _____ **Colorado** _____ §
                              §
County of _____ **Douglas** _____ §

On this _1ST_ day of _August_ in the year _2018_, before me, the undersigned, a Notary
Public in and for said State, personally appeared **Dane Wallace**                    the
_Second Assistant VP_ , personally known to me (or proved to me on the basis of satisfactory evidence)
to be the individual(s) whose name is(are) subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her capacity(ies) and that by his/her signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument.

**Highlands Ranch** in **Colorado Douglas**
(insert the city or other political subdivision)    (and insert the State and County or other place the acknowledgment was taken)

                        _____
                        Signature of Individual Taking Acknowledgment

                        **Gail M. Duffy**

┌─────────────────────────────┐
│     **GAIL M DUFFY**            │   Printed Name
│     Notary Public             │
│   State of Colorado           │   **Notary Public**
│  Notary ID # 20124040802      │
│My Commission Expires 07-02-2020│  Office of Individual Taking Acknowledgment
└─────────────────────────────┘

(Seal)                          My Commission Expires: _7/2/20_

**EXHIBIT A**

**BORROWER(S): KRISTINE M. VADJINIA**

**LOAN NUMBER** ████████

**LEGAL DESCRIPTION:**

**STATE OF NEW YORK, COUNTY OF SUFFOLK, AND DESCRIBED AS FOLLOWS:**

**ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE VILLAGE OF CENTEREACH, TOWN OR BROOKHAVEN, COUNTY OF SUFFOLK AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:**

**BEGINNING AT A POINT ON THE EAST SIDE OF OAK STREET, 1515.94 FEET NORTH OF THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF MIDDLE COUNTRY ROAD AND THE EASTERLY SIDE OF OAK STREET;**

**RUNNING THENCE NORTHERLY ALONG THE EAST SIDE OF OAK STREET, NORTH 04 DEGREES 11 MINUTES 30 SECONDS EAST, 60.02 FEET;**

**THENCE SOUTH 85 DEGREES 48 MINUTES 30 SECONDS EAST, 726.22 FEET TO A MONUMENT;**

**THENCE SOUTH 04 DEGREES 57 MINUTES 53 SECONDS WEST, 60.02 FEET;**

**THENCE NORTH 85 DEGREES 48 MINUTES 30 SECONDS WEST, 725.41 FEET TO THE EAST SIDE OF OAK STREET END THE POINT OR PLACE OF BEGINNING**

**Parcel ID Number: 0200.48500.0600.010000**
**ALSO KNOWN AS: 47 OAK ST, CENTEREACH, NY 11720**



**EXHIBIT B**

**LOAN NUMBER:** ███████

**ALSO KNOWN AS: 47 OAK ST, CENTEREACH, NY 11720**

**CHAIN OF TITLE:**

Mortgage made by **KRISTINE M VADJINIA** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, A CORPORATION OR ASSOCIATION, ITS SUCCESSORS AND ASSIGNS** for **$535,500.00** and interest, dated **January 9, 2007** and recorded on **January 30, 2007** in BOOK **21466** PAGE **766**. Mortgage Tax Paid: **$5,592.75**

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** to **WELLS FARGO BANK, N. A., AS TRUSTEE, ON BEHALF OF THE CERTIFICATEHOLDERS, MASTR ASSET BACKED SECURITIES TRUST 2007-NCW MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-NCW**, by assignment of mortgage dated **September 15, 2008** and recorded on **October 22, 2008** in BOOK **21762** PAGE **807**.

Modification Agreement
Proprietary W3078H                                    Page 10 of 10

Loan Originator Organization: Specialized Loan Servicing LLC, as Attorney-in-Fact for Wells Fargo Bank,
N.A. as Trustee for the MASTR Asset Backed Securities Trust 2007-NCW Mortgage Pass-Through
Certificates Series 2007-NCW, NMLSR ID:
Individual Loan Originator's Name NMLSR ID:
Loan No.

# AFFIDAVIT PURSUANT TO
# SECTION 255 OF THE NEW YORK TAX LAW

STATE OF Colorado )
                  ) ss.:
COUNTY OF Douglas )

Dane Wallace , being duly sworn, deposes and says:

1.       That he/she is the owner and holder, or the agent of the owner and holder, of the hereinafter
described mortgage, and is familiar with the facts and circumstances set forth herein.

2.       A certain mortgage bearing the date of **January 9, 2007**, in the principal amount of **Five
Hundred Thirty Five Thousand Five Hundred and 00/100ths ($535,500.00)** (the "Mortgage") was made by
**KRISTINE M VADJINIA** as Mortgagor to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, A CORPORATION OR
ASSOCIATION, ITS SUCCESSORS AND ASSIGNS** as Original Mortgagee, securing the obligations described
in that certain promissory note of even date therewith executed by Mortgagor in favor of Mortgagee, said mortgage
being recorded in the Office of the [County Clerk/City Register], **SUFFOLK** County on **01/30/2007** at Reel/Liber
**21466** of Mortgages, Page **766** (or as Instrument No. N/A) , upon which the mortgage tax **$5,592.75** was duly paid
thereon.

Mortgage made by **KRISTINE M VADJINIA** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, A CORPORATION OR
ASSOCIATION, ITS SUCCESSORS AND ASSIGNS** for **$535,500.00** and interest, dated **January 9, 2007** and
recorded on **January 30, 2007** in BOOK 21466 PAGE 766. Mortgage Tax Paid: **$5,592.75**

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING
SOLELY AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, ITS SUCCESSORS AND
ASSIGNS** to **WELLS FARGO BANK, N. A., AS TRUSTEE, ON BEHALF OF THE
CERTIFICATEHOLDERS, MASTR ASSET BACKED SECURITIES TRUST 2007-NCW MORTGAGE
PASS-THROUGH CERTIFICATES SERIES 2007-NCW,** by assignment of mortgage dated **September 15, 2008**
and recorded on **October 22, 2008** in BOOK 21762 PAGE 807.

3.       The instrument offered for recording herewith is a Modification of the Mortgage made by
**KRISTINE M. VADJINIA** to **SPECIALIZED LOAN SERVICING LLC, AS ATTORNEY-IN-FACT FOR
WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE MASTR ASSET BACKED SECURITIES TRUST
2007-NCW MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-NCW,** effective **July 17, 2018**
and recorded in the Office of the [County Clerk/City Register], **SUFFOLK** County.

4.       The instrument offered for recording herewith modifies the Mortgage and does not create or
secure any new or further lien, indebtedness, or obligation other than the principal indebtedness or obligation
secured by the Mortgage, with the exception of the following amount:

a) Unpaid principal balance secured by the Mortgage: **$534,476.46**

©2010-2015, The Compliance Source, Inc.



b) New unpaid principal balance: **$1,224,468.22**
c) "b" minus "a" equals: **$689,991.76 .**
d) Additional obligations secured by the Mortgage as modified:

Additional mortgage recording tax of $ *7,245.00* is therefore being paid on this Modification on the sum set forth in Section 4c.

WHEREFORE, pursuant to Section 255 of the Tax Law, deponent claims exemption from further taxation as to the instrument offered for recording herewith.

Lender:
**SPECIALIZED LOAN SERVICING LLC, AS
ATTORNEY-IN-FACT FOR WELLS FARGO BANK,
N.A. AS TRUSTEE FOR THE MASTR ASSET
BACKED SECURITIES TRUST 2007-NCW
MORTGAGE PASS-THROUGH CERTIFICATES
SERIES 2007-NCW**

By: _____

Dane Wallace
Second Assistant Vice President
Customer Resolution Workout

Its: _SAVP_  8-8-18

Sworn to before me this 8th day of August 2018

Notary Public

GAIL M DUFFY
Notary Public
State of Colorado
Notary ID # 20124040802
My Commission Expires 07-02-2020



RECORDED
2018 Dec 14 03:56:48 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00022989
P 593
DJ032834

| 1 | 2 |

Number of pages ____ 20

**TORRENS**

Serial # _____

Certificate # _____

Prior Ctf. # _____

EXHIBIT 3

RECORDED
2007 Jan 30 12:17:08 PM
Judith A. Pascale
CLERK OF
SUFFOLK COUNTY
L M00021466
P 766
DT 02909

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

**3**                                   FEES

| | | |
|---|---|---|
| Page / Filing Fee | ____ | Mortgage Amt. 535,500 |
| Handling | 5. 00 | 1. Basic Tax ____ |
| TP-584 | ____ | 2. Additional Tax ____ |
| Notation | ____ | Sub Total ____ |
| EA-52 17 (County) | Sub Total ____ | Spec./Assit. ____ |
| | | or |
| EA-5217 (State) | | Spec. /Add. ____ |
| R.P.T.S.A. | 30 00 | TOT. MTG. TAX 5592.75 |
| | | Dual Town ____ Dual County ____ |
| Comm. of Ed. | 5. 00 | Held for Appointment ____ |
| Affidavit | ____ | Transfer Tax ____ |
| Certified Copy | ____ | Mansion Tax ____ |

NYS Surcharge  15. 00  Sub Total ____

Other  ____  Grand Total  115

0200 48500 0600 010000   OM

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES ✓ or NO ____

If NO, see appropriate tax clause on page # ____ of this instrument.

**4** Dist. 0200

R EMC A
30-JAN-07
P T S

Real Property Tax Service Agency Verification

**5** Community Preservation Fund

Consideration Amount $ ____

CPF Tax Due  $ ____

| | |
|---|---|
| Improved | ____ |
| Vacant Land | ____ |
| TD | ____ |
| TD | ____ |
| TD | ____ |

**6** Satisfactions/Discharges/Releases List Property Owners Mailing Address

**RECORD & RETURN TO:**

New Century Mtg Corporation
18400 Von Karman, Ste 1000
Irvine, CA
92612

**7** Title Company Information

Co. Name  Expedient

Title #  ▮▮▮▮▮

**8** **Suffolk County Recording & Endorsement Page**

This page forms part of the attached ____ M+J ____ made by:

____ Vad Jiria ____

(SPECIFY TYPE OF INSTRUMENT)

The premises herein is situated in SUFFOLK COUNTY, NEW YORK.

TO
New Century Mtg

In the Township of  Brookhaven

In the VILLAGE ____

or HAMLET of ____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE MIN ██████████

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated  January 9, 2007
together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."** KRISTINE M VADJINIA

whose address is 47 OAK STREET , CENTEREACH, NY 11720

sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.**
**(D) "Lender."** New Century Mortgage Corporation

will be called "Lender." Lender is a corporation or association which exists under the laws of
California                              Lender's address is 18400 Von Karman, Suite
1000, Irvine, CA 92612

Section:              Block:              Lot:              Unit:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3033 1/01

-6A(NY) (0509) 01
Page 1 of 17          Initials: _KMV_
VMP Mortgage Solutions, Inc.

**(E) "Note."** The note signed by Borrower and dated   January 9, 2007              , will be called the "Note." The Note shows that I owe Lender FIVE HUNDRED THIRTY-FIVE THOUSAND FIVE HUNDRED AND 00/100

Dollars (U.S. $535,500.00                 )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by 02/01/2037

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Prepayment Rider

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions; transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

VMP6A(NY) (0508).01                               Page 2 of 20          Initials *KDV*          Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument and, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 47 OAK STREET

[Street]

CENTEREACH                    [City, Town or Village], New York 11720      [Zip Code].

This Property is in SUFFOLK                                County. It has the following legal description: See Legal Description Attached Hereto and Made a Part Hereof

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

VMP -6A(NY) (0506).01                         Page 2 of 17      Initials: KMV          Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

Initials: _KmV_

-6A(NY) (0508).01

Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

initials  KmV

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

VMP -6A(NY) (0806).01                    Page 8 of 18                    Initials: KMV                    Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

VMP®-6A(NY) (0501).01                    Page 8 of 17                    Initials: _Kmv_            Form 3033 1/01

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

-6A(NY) (0508).01                                   12-3                Initials  KmV                    Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

Initials: KMV 

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument, or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Initials: KmV

Form 3033 1/01

VMP®-6AINY1 (0508).01    Page 13 of 17

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

VMP -6A(NY) (0506).01                    Page 14 of 17        Initials: _KmV_        Form 3033 1/01

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____ (Seal)
KRISTINE M VADJINIA                -Borrower

_____          _____ (Seal)
                                                                                        -Borrower

_____ (Seal)   _____ (Seal)
                                   -Borrower                                            -Borrower

_____ (Seal)   _____ (Seal)
                                   -Borrower                                            -Borrower

_____ (Seal)   _____ (Seal)
                                   -Borrower                                            -Borrower

VMP -6A(NY) (0508).01              Page 16 of 17              Form 3033 1/01

STATE OF NEW YORK,                          Nassau    County ss:

On the    9    day of    ~~~~~ /  2007    before me, the undersigned, a notary
public in and for said state, personally appeared

Krishi M. Vadjina

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

Assessor's Parcel Number:  DIS 200 SEC 485 BK6 LOT10

Rachel L. Cherny
Notary Public, State of New York
No 02CH6057201
Qualified Nassau County
Commission Expires April 20__

6A(NY) (050b).01                    Page 7 of 12            Initials KmV        Form 3033 1/01

MIN: ███████

# PREPAYMENT RIDER

This Prepayment Rider is made this **9th** day of **January, 2007** and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to                                                                                          (the "Lender").
**New Century Mortgage Corporation**

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

## 4. BORROWER RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full or partial prepayment without paying any penalty. If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if within the first twelve (12) months after the execution of the Mortgage, I make any prepayment(s), the total amount of which exceeds twenty percent ( 20 %) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of six ( 6 ) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds twenty percent ( 20 %) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Kristne M Vadjinia_
KRISTINE M VADJINIA

NCMC
Prepayment Penalty Rider
Fixed Rate - 1st Lien - New York
RE-500   (080106)

Page 1 of 1

████████

12/29/2006 10:40 FAX  8813957838      LAND BARON ABSTRACT      → MICHELLE

**EXPEDIENT LAND SERVICES, LLC.**
AS AGENT FOR:
EL-Chicago Title Insurance Company, Inc.

Title No:

**SCHEDULE A**

District: 0200  Section: 485.00  Block: 06.00  Lot: 010.000

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Village of Centereach, Town of Brookhaven, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point on the East side of Oak Street, 1515.94 feet North of the corner formed by the intersection of the northerly side of Middle Country Road and the easterly side of Oak Street;

Running thence northerly along the East side of Oak Street, North 04 degrees 11 minutes 30 seconds East, 60.02 feet;

Thence South 85 degrees 48 minutes 30 seconds East, 726.22 feet to a monument;

Thence South 04 degrees 57 minutes 53 seconds West, 60.02 feet;

Thence North 85 degrees 48 minutes 30 seconds West, 725.41 feet to the East side of Oak Street and the point or place of BEGINNING.

Said premises being known as and by the street address:

47 Oak Street, Centereach, NY 11720



EXHIBIT 4



## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE      Recorded:    10/22/2008
Number of Pages: 3      At:      12:29:16 PM
Receipt Number : 08-0102046

       LIBER:    M00021762
       PAGE:     807

District:      Section:      Block:      Lot:
0200      485.00      06.00      010.000

EXAMINED AND CHARGED AS FOLLOWS
Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $15.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Notation | $0.50 | NO | Cert.Copies | $0.00 | NO |
| RPT | $30.00 | NO | | | |

         Fees Paid      $85.50
THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

Judith A. Pascale
County Clerk, Suffolk County

| | 1 | 2 | | RECORDED<br>2008 Oct 22 12:29:16 PM<br>Judith A. Pascale<br>CLERK OF<br>SUFFOLK COUNTY<br>L M00021762<br>P 807 |
|---|---|---|---|---|

Number of pages    3

**TORRENS**

Serial # _____

Certificate # _____

Prior Ctf. # _____

| Deed , Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 3 | | **FEES** | |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Page / Filing Fee | 15 | Mortgage Amt. | |
| Handling | 20 | 1. Basic Tax | |
| TP-584 | | 2. Additional Tax | |
| Notation | 50 | Sub Total | |
| EA-5217 (County) | Sub Total  35 50 | Spec. / Assit. or | |
| EA-5217 (State) | | Spec. / Add. | |
| R.P.T.S.A. | 30  00 | TOT. MTG. TAX | |
| Comm. of Ed. | 5. 00 | Dual Town ____ Dual County ____<br>Held for Appointment ____ | |
| Affidavit | | Transfer Tax | |
| Certified Copy | | Mansion Tax | |
| | | The property covered by this mortgage is or will be improved by a one or two family dwelling only. | |
| Reg. Copy | Sub Total  50 | YES ____ or NO ____ | |
| Other | 15  Grand Total  85 50 | IF NO, see appropriate tax clause on page # ____ of this instrument. | |

| 4 | .0200<br>District  485.00 Section | Block 66.00 Lot 010.000 | 5 | **Community Preservation Fund** |
|---|---|---|---|---|

Real Property Tax Service Agency Verification   10-17-08

| Consideration Amount | $ |
|---|---|
| CPF Tax Due | $ |

| | |
|---|---|
| Improved | |
| Vacant Land | |
| TD | |
| TD | |
| TD | |

| 6 | Satisfaction/Discharges/Release List Property Owners Mailing Address<br>**RECORD & RETURN TO:** |
|---|---|

WEB TITLE AGENCY
69 Cascade Drive
Knowlson Building, Suite 202
Rochester, New York 14614

| 7 | **Title Company Information** |
|---|---|
| Co. Name | WebTitle Agency |
| Title # | |

| 8 | **Suffolk County Recording & Endorsement Page** |
|---|---|

This page forms part of the attached _Assignment of Mortgage_ made by:
(SPECIFY TYPE OF INSTRUMENT)

MERS, Inc.                    The premises herein is situated in

SUFFOLK COUNTY, NEW YORK.

TO                    In the Township of _Centereach_

Wells Fargo Bank, N.A.    In the VILLAGE

                    or HAMLET of _____

BOXES 6 THROUGH 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING

RECORD & RETURN TO:
ESCHEN, FRENKEL, WEISMAN & GORDON, LLP
20 West Main Street
Bay Shore, New York 11706

SECTION:485.00
BLOCK:06.00
LOT:010.000    District 0200
COUNTY: Suffolk

## ASSIGNMENT OF MORTGAGE

Know that **Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for New Century Mortgage Corporation ("Assignor"),** having a place of business at 18400 Von Karman, Suite 1000, Irvine, CA 92612, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by **Wells Fargo Bank, N. A., as Trustee, on behalf of the Certificateholders, MASTR Asset Backed Securities Trust 2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW, ("Assignee"),** having a place of business at c/o Countrywide Home Loans, Inc., 7105 Corporate Drive, PTX-C35, Plano, TX 75024, does hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Suffolk, for the premises known us 47 Oak Street Centereach, NY 11720, together with the indebtedness or obligation described in said instrument, and the monies due and to grow due thereon with the interest, as follows:

| | |
|---|---|
| MORTGAGOR: | Kristine M. Vadjinia |
| MORTGAGEE: | Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for New Century Mortgage Corporation |
| AMOUNT: | 535,500.00 |
| DATE: | January 9, 2007 |
| RECORDED: | January 30, 2007 |
| LIBER: | Liber 21466 |
| PAGE: | 766 |

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this ___ day of **SEP 1 5 2008** 2008.

IN PRESENCE OF:

*Mary Chavarria*

Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for New Century Mortgage Corporation:

BY M. Kelly Michie, 1st Vice President

As attorney in fact pursuant to power of attorney
or
As authorized agent pursuant to Board of Resolutions and/or appointment

STATE OF TEXAS )
COUNTY OF COLLIN ) SS.:

On the ___ day of **SEP 1 5 2008**, in the year 2008, before me, the undersigned, personally appeared **M. Kelly Michie**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in COLLIN County,

*Cathy Repka*

Notary Public

Our file No. ▇▇▇

**KATHY REPKA**
**My Commission Expires**
**November 14, 2010**





## SCHEDULE "A"

**Address:**
47 OAK STREET
CENTEREACH, NY 11720

DISTRICT: 0200 SECTION: 485.00 BLOCK: 06.00 LOT: 010.000

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE VILLAGE OF
CENTEREACH, TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK AND STATE OF NEW
YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EAST SIDE OF OAK STREET, 1515.94 FEET NORTH OF THE
CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF MIDDLE COUNTRY
ROAD AND THE EASTERLY SIDE OF OAK STREET;

RUNNING THENCE NORTHERLY ALONG THE EAST SIDE OF OAK STREET, NORTH 04
DEGREES 11 MINUTES 30 SECONDS EAST, 60.02 FEET;

THENCE SOUTH 85 DEGREES 48 MINUTES 30 SECONDS EAST, 726.22 FEET TO A
MONUMENT;

THENCE SOUTH 04 DEGREES 57 MINUTES 53 SECONDS WEST, 60.02 FEET;

THENCE NORTH 85 DEGREES 48 MINUTES 30 SECONDS WEST, 725.41 FEET TO THE EAST
SIDE OF OAK STREET AND THE POINT OR PLACE OF BEGINNING.

SAID PREMISES BEING KNOWN AS AND BY THE STREET ADDRESS:

47 OAK STREET, CENTEREACH, NY 11720

 **Computershare**

Subject Property
47 Oak St
Centereach, NY 11720

**BPO** BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

## ORDER DETAILS

| | | | |
|---|---|---|---|
| Client: | SLS | Mortgagors Name: | KRISTINE M VADJINIA |
| Client Loan Number: | ███████ | Order Number: | ███████ |
| Tracking #1: | | Property ID: | |
| Broker Name: | Dana Farber | License Number: | ███████ |
| Broker Phone: | (631) 619-6219 | eSignature*: | (*Signature on File) |
| Broker Company: | Dana Farber | Date Signed: | 11/30/2019 |
| Broker Address: | 66 Wood Rd Centereach, NY 11720 | Subject Address: | 47 Oak St Centereach, NY 11720 |

## SUBJECT FRONT



## NEIGHBORHOOD



## PRICE ESTIMATE

| **AS-IS (60-90 Days)** | **$400,000** | **Repaired (60-90 Days)** | **$400,000** |
|---|---|---|---|
| **AS-IS (Quick Sale)** | **$380,000** | **Repaired (Quick Sale)** | **$380,000** |
| Estimated Land Value | $80,000 | Total Repair Costs | $0 |
| PSF As-Is (Price per SqFt) | $179.86 | PSF Repaired (Price per SqFt) | $179.86 |

## GENERAL INFORMATION

| | | | |
|---|---|---|---|
| County | Suffolk | Overall Condition | Average |
| Development or Neighborhood Name | Centereach | Curb Appeal | Average |
| Zoning | Residential | Landscaping Condition | Average |
| Legal Description | S0200485000600010000 | | |
| Homeowners Association | No | Secured | Yes |
| HOA Name | | Occupancy Status | Occupied |
| HOA Mgmt. Co, Name | | If "Occupied", by whom? | Owner |
| HOA Phone | | Subject conforms to neighborhood? | Yes |
| HOA Dues | | Are any Code Violations Posted? | No |
| HOA Dues Frequency | | Is the property subject to any rent controls? | No |
| HOA Dues Include | | Does the City or Municipality require Vacant Property Registration? | No |
| Environmental Hazards | There are no environmental hazards noted or observed. | Site Influences | The subject is located on a wooded residential street within the residential neighborhood. |

## TAX DATA, SALES & LISTING HISTORY

| | | | |
|---|---|---|---|
| Tax Assessed Value Date | 06/07/2019 | Last Known Sale Date | 04/20/2005 |
| Tax Assessed Value | 343,333 | Last Known Sale Price | 449,500 |
| Current Annual Real Estate Taxes | 10,815 | Taxes Delinquent? | No |
| Assessors Parcel Number (APN) | S0200485000600010000 | Amount Delinquent | |
| Currently Listed for Sale (In MLS or FSBO) | No | | |
| Agent Name | | Original List Price | 0 |
| Agent Company | | Original List Date | |
| Agent Phone | | Current List Price | |
| DOM | | Current List Date | |
| Transaction Type | | Dwelling Access | |
| Listing Status | | MLS Number | |

**Computershare**

**BPO** BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

## NEIGHBORHOOD & MARKET INFORMATION

| | | | |
|---|---|---|---|
| Density | Suburban | Prior 12 Month Home Values Have | Increasing |
| Predominant Occupancy | Owner | At a Rate of | 10 |
| Neighborhood Values Low | 220,000 | Housing Supply of Similar Homes | Shortage |
| Neighborhood Values High | 540,000 | Typical Marketing Time | 90-120 Days |
| Predominant Value | 400,000 | Vandalism Present in Area | No |
| Number of Homes in Direct Competition | 14 | Average DOM Active Comps | 95 |
| Number of Similar Homes Sold in Last 6 Months | 12 | Average DOM Sold Comps | 60 |

Neighborhood Comments — The subject is located on a wooded residential street. This area is made up of different style, age and designed detached single family dwellings. This area consists of older style homes and new construction being built on vacant lots.

## AREA PRICE & AVERAGE PRICE & SALES VOLUME CHARTS





| price | 168 | 229 | 325 | 299 | 382 | 357 | 358 | 344 | 266 | 261 | 394 | 270 | 226 | 257 | 307 | 306 | 232 | 528 | 346 |
|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| volume | 16 | 20 | 28 | 37 | 41 | 57 | 46 | 21 | 27 | 22 | 25 | 21 | 21 | 31 | 30 | 25 | 37 | 26 | 18 |

## AREA SALES DATA

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | % Change | Overall Trend |
|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 104 | 71 | 57 | -4 % | Stable |
| Absorption Rate (Total Sales/Months) | 17 | 24 | 19 | -4 % | Stable |
| Total # of Comparable Active Listings | 96 | 77 | 66 | -24 % | Decreasing |
| Months of Housing Supply (Total Listings/Absorption Rate) | 6 | 3 | 3 | -26 % | Decreasing |

| Median Sale & List Price, DOM, List to Sales Ratio | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | % Change | Overall Trend |
|---|---|---|---|---|---|
| Median Comparable Sale Price | 345,000 | 365,000 | 372,000 | 10 % | Increasing |
| Median Comparable Sales DOM | 110 | 95 | 111 | -6 % | Stable |
| Median Comparable List Price | 364,495 | 359,990 | 398,000 | 6 % | Increasing |
| Median Comparable Listings DOM | 62 | 52 | 49 | -56 % | Decreasing |
| Median Sale Price as % of List Price | 99 % | 100 % | 100 % | 0 % | Stable |

## DEFERRED MAINTENANCE

**Deferred Maintenance Present or Repairs Needed?** No

| # | Description | Cost | Comments |
|---|---|---|---|
| 1 | | $ | |
| 2 | | $ | |
| 3 | | $ | |
| 4 | | $ | |
| 5 | | $ | |
| 6 | | $ | |
| 7 | | $ | |
| 8 | | $ | |
| 9 | | $ | |
| 10 | | $ | |
| 11 | | $ | |
| 12 | | $ | |
| | Total Repair Costs | $ 0 | |

# Computershare

**Subject Property**
47 Oak St
Centereach, NY 11720

## BPO BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

## COMPARABLE SALES

| Items | Subject | Comparable Sale 1 | Comparable Sale 2 | Comparable Sale 3 |
|---|---|---|---|---|
| Photos | | | | |
| Street Address | 47 Oak St | 9 Ginger Ct | 75 N Coleman Rd | 1 Liberty Dr |
| City, State Zip | Centereach, NY 11720 | Centereach, NY 11720 | Centereach, NY 11720 | Centereach, NY 11720 |
| Sale Date | 03/01/2004 | 06/11/2019 | 09/24/2019 | 06/28/2019 |
| Sale Price | 95,000 | 440,000 | 420,000 | 352,000 |
| Proximity To Subject (Miles) | | 0.54 mi SW | 1.64 mi E | 0.29 mi NE |
| Condition | Average | Average | Average | Average |
| Data Source | Tax Records | MLS | MLS | MLS |
| Property Type | Single Family | Single Family | Single Family | Single Family |
| Property Style | 2 Story | 2 Story | 2 Story | 1.5 Story |
| Above Grade SqFt | 2,224 | 2,315 | 2,423 | 1,638 |
| # of Units | 1 | 1 | 1 | 1 |
| Lot Size (Acres) | 1.00 Acres | 0.49 Acres | 1.18 Acres | 0.44 Acres |
| Year Built | 2004 | 1988 | 1996 | 1997 |
| Age | 15 | 31 | 23 | 22 |
| Total # Rooms | 8 | 8 | 9 | 6 |
| Bed / Full Bath / Half Bath | 4 / 2 / 1 | 4 / 2 / 1 | 5 / 3 / 1 | 3 / 2 / 0 |
| Financing Method | Conventional | FHA | Conventional | FHA |
| Transaction Type | Traditional Resale | Traditional Resale | Traditional Resale | Traditional Resale |
| Owner | Owner Occ | Owner Occ | Owner Occ | Owner Occ |
| Seller Concessions | 0 | 0 | 0 | 0 |
| Price Per SqFt | $42.72 | $190.06 | $173.34 | $214.90 |
| DOM | | 311 | 144 | 51 |
| List Price At Sale | | 445,000 | 449,900 | 339,900 |
| Original List Price | 0 | 459,000 | 449,900 | 339,900 |
| Original List Date | | 08/04/2018 | 05/03/2019 | 05/08/2019 |
| Basement | Yes | Yes | Yes | Yes |
| Basement Type | Cellar (Fully Below Grade) | Cellar (Fully Below Grade) | Cellar (Fully Below Grade) | Cellar (Fully Below Grade) |
| Basement Total SqFt | 800 | 900 | 1,000 | 1,000 |
| Basement Finished SqFt | 0 | 0 | 0 | 900 |
| Garage Type | None | Attached | Attached | Attached |
| Number of spaces | 2 | 2 | 1 | 1 |
| Pool / Spa | None | None | None | None |
| View | Residential | Residential | Residential | Residential |
| Adjustment | | 0 | 0 | 0 |
| Adjusted Price | | 440,000 | 420,000 | 352,000 |

## COMPARABLE COMMENTS & ADJUSTMENT JUSTIFICATION

**Comparable Sale 1**

Larger colonial style home with a full unfinished basement, 2 car attached garage, porch, patio, CAC, fireplace, 4 bedrooms and 2.5 baths on a .49 acre lot.

**Comparable Sale 2**

Larger colonial style home with a full unfinished basement, 1 car attached garage, porch, patio, CAC, fireplace, 5 bedrooms and 3.5 baths on a larger 1.18 acre lot.

**Comparable Sale 3**

Smaller modern cape style home with a full finished basement, 1 car attached garage, rear patio, 3 bedrooms and 2 baths on a .44 acre lot.

# Computershare

**Subject Property**
47 Oak St
Centereach, NY 11720

**BPO** BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

## COMPARABLE LISTINGS

| Items | Subject | Comparable List 1 | Comparable List 2 | Comparable List 3 |
|---|---|---|---|---|
| Photos | | | | |
| Street Address | 47 Oak St | 17 Rock Island Rd | 5 Embassy Rd | 171 Hammond Ln |
| City, State Zip | Centereach, NY 11720 | Centereach, NY 11720 | Selden, NY 11784 | Centereach, NY 11720 |
| List Date | | 09/23/2019 | 07/17/2019 | 09/09/2019 |
| Current List Price | | 479,900 | 464,999 | 419,999 |
| Proximity To Subject (Miles) | | 1.02 mi E | 3.39 mi E | 0.92 mi N |
| Condition | Average | Good | Average | Average |
| Data Source | Tax Records | MLS | MLS | MLS |
| Property Type | Single Family | Single Family | Single Family | Single Family |
| Property Style | 2 Story | 2 Story | 2 Story | 2 Story |
| Above Grade SqFt | 2,224 | 2,315 | 2,600 | 2,040 |
| # of Units | 1 | 1 | 1 | 1 |
| Lot Size (Acres) | 1.00 Acres | 0.39 Acres | 0.53 Acres | 0.42 Acres |
| Year Built | 2004 | 1999 | 1999 | 2002 |
| Age | 15 | 20 | 20 | 17 |
| Total # Rooms | 8 | 8 | 9 | 8 |
| Bed / Full Bath / Half Bath | 4 / 2 / 1 | 4 / 2 / 1 | 4 / 2 / 1 | 3 / 2 / 1 |
| Transaction Type | Traditional Resale | Traditional Resale | Traditional Resale | Traditional Resale |
| Owner | Owner Occ | Owner Occ | Owner Occ | Owner Occ |
| Price Per SqFt | | $207.30 | $178.85 | $205.88 |
| DOM | | 67 | 135 | 81 |
| MLS Status | | Under Contract | Active | Under Contract |
| Original List Price | 0 | 479,900 | 489,990 | 419,999 |
| Original List Date | | 09/23/2019 | 07/17/2019 | 09/09/2019 |
| Basement | Yes | Yes | Yes | Yes |
| Basement Type | Cellar (Fully Below Grade) | Cellar (Fully Below Grade) | Cellar (Fully Below Grade) | Cellar (Fully Below Grade) |
| Basement Total SqFt | 800 | 800 | 1,200 | 1,000 |
| Basement Finished SqFt | 0 | 0 | 0 | 1,000 |
| Garage Type | None | Attached | Attached | Attached |
| Number of spaces | 2 | 2 | 2 | 1 |
| Pool / Spa | None | None | None | None |
| View | Residential | Residential | Residential | Residential |
| Adjustment | | 0 | 0 | 0 |
| Adjusted Price | | 479,900 | 464,999 | 419,999 |

## COMPARABLE COMMENTS & ADJUSTMENT JUSTIFICATION

**Comparable List 1**

Larger modern style colonial with a full unfinished basement, 2 car attached garage, porch, patio, deck, 4 bedrooms and 2.5 baths on a .39 acre lot.

**Comparable List 2**

Larger colonial style home with a full unfinished basement, 2 car attached garage, porch, deck, CAC, fireplace, 4 bedrooms and 2.5 baths on a .53 acre lot.

**Comparable List 3**

Smaller colonial style home with a full finished basement, 1 car attached garage, porch, deck, CAC, fireplace, 3 bedrooms and 2.5 baths on a .42 acre lot.

# Computershare

**BPO** BROKER PRICE OPINION

## VALUE CONCLUSION

| | | | | | |
|---|---|---|---|---|---|
| **As-Is (60-90 Days)** | $ | 400,000 | **Repaired (60-90 Days)** | $ | 400,000 |
| **As-Is (Quick Sale)** | $ | 380,000 | **Repaired (Quick Sale)** | $ | 380,000 |
| | | **Estimated Land Value** | $ | 80,000 | |

## BROKER ADDENDUM & SUBJECT COMMENTS

The subject is an occupied colonial style home with a full unfinished basement, 1 car converted garage to living space, porch, patio, 4 bedrooms and 2.5 baths on a 1 acre lot. The home is located within a residential neighborhood. This are is made up of different style, age and designed residential dwellings on small and large lots. This are is showing signs of improvement. Vacant land is being improved with new homes. The subject appears to be in maintained condition with no damage noted. The interior condition was unable to be determined. All of the comps utilized are similar in size, style, amenities, utility, market area and the same school district as the subject.

## QUALITY CONTROL REVIEWER COMMENTS

Subject data matches the prior BPO.  Subject photos appear consistent with Google maps. Although the agent didn't note value adjustments for all differences between the subject and comps, the value seems reasonably placed in consideration of the differences and is within tolerance of the prior BPO on file.

# Computershare

**Subject Property**
47 Oak St
Centereach, NY 11720

**BPO** BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

## STATE MANDATED DISCLOSURES

| | |
|---|---|
| **AR** | Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. Pursuant to Ark. Code. Ann. § 17-42-110(d), a broker price opinion or market analysis issued by a real estate licensee shall not contain the terms "market value", "appraised value" or "appraisal". |
| **DE** | Notwithstanding any language to the contrary contained herein, this Competitive Market Analysis is NOT an appraisal of the market value for property and is not intended to be used for any legal purpose including approving a mortgage loan, modification of a mortgage loan, divorce/property separation, estate settlement, bankruptcy proceedings or any other purpose where real estate value is needed. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. |
| **ID** | This report is not intended to meet the Uniform Standards of Professional Appraisal Practice. This broker's price opinion is not intended to be an appraisal of the market value of the property, and that if an appraisal is desired, the services of a licensed or certified appraiser should be obtained by a licensee licensed under the Idaho real estate appraisers act, chapter 41 title 54 Idaho Code |
| **IL** | This is a broker price opinion/comparative market analysis, not an appraisal of the market value of the real estate, and was prepared by a licensed real estate broker or managing broker who was not acting as a State certified real estate appraiser. |
| **MD** | This analysis is not an appraisal. It is intended only for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property. |
| **ME** | This opinion or appraisal was prepared solely for the client, for the purpose and function stated in this report and is not intended for subsequent use. It was not prepared by a licensed or certified appraiser and may not comply with the appraisal standards of the Uniform Standards of Professional Appraisal Practice. |
| **MI** | This is a market analysis, not an appraisal and was prepared by a licensed real estate broker or associate broker, not a licensed appraiser. |
| **MN** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. |
| **MS** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit.<br><br>The licensee who prepared this opinion certifies that he/she is covered by errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of the opinion. |
| **NC** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel or of interest services of a in real property for a mortgage loan origination, including first and second mortgages, refinances, or equity lines of credit. |
| **NE** | This opinion or analysis is not an appraisal. It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property, for lending purposes in a transaction other than a federally related transaction, or for real property tax appeal purposes. This opinion or analysis is not governed by the Real Property Appraiser Act. |
| **NV** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. |
| **OR** | If licensee is also licensed by the Appraiser Certification and Licensure Board, the report is not intended to meet the requirements set out in the Uniform Standards of Appraisal Practice. This competitive market analysis or letter opinion is not intended as an appraisal and if an appraisal is desired, the services of a competent professional licensed appraiser should be obtained. |
| **PA** | This analysis has not been performed in accordance with the Uniform Standards of Professional Appraisal Practice which require valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accommodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose. |
| **SC** | This market analysis may not be used for the purposes of obtaining financing in a federally related transaction. |
| **TX** | THIS IS A BROKER PRICE OPINION OR COMPARATIVE MARKET ANALYSIS AND SHOULD NOT BE CONSIDERED AN APPRAISAL OR OPINION OF VALUE. In making any decision that relies upon my work, you should know that I have not followed the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation. |
| **WA** | This brokers price opinion is not an appraisal as defined in chapter 18.140 RCW and has been prepared by a real estate licensee, licensed under chapter 18.85 RCW, who is not also state-certified or state-licensed as a real estate appraiser under chapter 18.140 RCW. |
| **WY** | This is an opinion of price and is not a certified appraisal of the market value of the property. If such an appraisal is desired, the service of a certified appraiser must be obtained. |

# Computershare

**BPO** BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

## GENERAL ADDENDUM

This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose. The intended user of this report is the Client(s) named above and is to be used at the Client(s) sole discretion. This report is not intended as any guarntee of value and/or condition of the subject property and should not be relied on as such. Any opinion rendered in this report is that of the report preparer and does not necessarily reflect the views and opinions of Computershare LLC  or its owners, affiliates and or assigns. All data contained herein is deemed accurate and reliable but not guaranteed.

Copyright (C) Computershare LLC

## PROXIMITY MAP



| Subject | 47 Oak St | Centereach, NY 11720 | Proximity |
|---|---|---|---|
| Sold Comp 1 | 9 Ginger Ct | Centereach, NY 11720 | 0.54 mi SW |
| Sold Comp 2 | 75 N Coleman Rd | Centereach, NY 11720 | 1.64 mi E |
| Sold Comp 3 | 1 Liberty Dr | Centereach, NY 11720 | 0.29 mi NE |
| List Comp 1 | 17 Rock Island Rd | Centereach, NY 11720 | 1.02 mi E |
| List Comp 2 | 5 Embassy Rd | Selden, NY 11784 | 3.39 mi E |
| List Comp 3 | 171 Hammond Ln | Centereach, NY 11720 | 0.92 mi N |

## SUBJECT AERIAL VIEW

# Computershare

**BPO** BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

## SUBJECT PROPERTY PHOTOGRAPHS

Front View



Left Side View



Right Side View



Street View



Address Verification

# Computershare

Subject Property
47 Oak St
Centereach, NY 11720

**BPO** BROKER PRICE OPINION

Inspection Date: 11/29/2019    (Exterior Report)

**COMPARABLE PROPERTY PHOTOGRAPHS**



Comparable Sale 1 - Front View
9 Ginger Ct
Centereach, NY 11720
Sold for $440,000 on 06/11/2019



Comparable Listing 1 - Front View
17 Rock Island Rd
Centereach, NY 11720
Listed for $479,900 on 09/23/2019



Comparable Sale 2 - Front View
75 N Coleman Rd
Centereach, NY 11720
Sold for $420,000 on 09/24/2019



Comparable Listing 2 - Front View
5 Embassy Rd
Centereach, NY 11720
Listed for $464,999 on 07/17/2019



Comparable Sale 3 - Front View
1 Liberty Dr
Centereach, NY 11720
Sold for $352,000 on 06/28/2019



Comparable Listing 3 - Front View
171 Hammond Ln
Centereach, NY 11720
Listed for $419,999 on 09/09/2019